## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TENNESSEE
## WESTERN DIVISION

| | | |
|---|---|---|
| ANTONIO DOCKERY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | No. 2:18-cv-02374-TLP-tmp |
| v. | ) | |
| | ) | |
| RUSSELL WASHBURN, Warden, | ) | |
| | ) | |
| Respondent. | ) | |

## ORDER DISMISSING PETITION, DENYING CERTIFICATE OF APPEALABILITY, CERTIFYING THAT AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH, AND DENYING LEAVE TO PROCEED IN FORMA PAUPERIS ON APPEAL

Petitioner Antonio Dockery petitioned pro se under 28 U.S.C. § 2254 for a writ of habeas corpus by a person in state custody ("§ 2254 Petition").[1]  (ECF No. 1.)  Respondent Russell Washburn answered the § 2254 Petition, and Petitioner replied.  (ECF Nos. 17 & 26.)

The issues Petitioner raises in the habeas petition fall into three categories: whether (1) the procedural default doctrine bars Petitioner's claims, (2) the state court identified and applied the correct federal legal principles, and (3) the claims present a violation of federal law.  For the reasons discussed below, the Court DISMISSES the § 2254 Petition.

## BACKGROUND

### I.    State Court Procedural History

In April 2011, a Shelby County Criminal Court jury convicted Petitioner for aggravated assault, stalking, and aggravated kidnapping.  (ECF No. 16-1 at PageID 76.)  The trial court

---

[1] Petitioner is an inmate at Trousdale Turner Correctional Center.  His prisoner number is 236265.

sentenced Petitioner to a total effective sentence of thirty-four years in prison.  (ECF No. 16-1 at PageID 91–93.)

Then Petitioner appealed.  (ECF No. 16-1 at PageID 119.)  The Tennessee Court of Criminal Appeals ("TCCA") affirmed the convictions for aggravated assault and stalking, but concluded that the trial court erroneously instructed the jury about the aggravated kidnapping charge.  *State v. Dockery*, No. W2012-01024-CCA-R3-CD, 2014 WL 172379, at 1 (Tenn. Crim. App. Jan. 15, 2014), *perm. app. denied* (Tenn. May 14, 2014).  As a result, the TCCA reversed Petitioner's aggravated kidnapping conviction and remanded for a new trial on that charge.[2]  *Id.*

In June 2014, Petitioner petitioned pro se for post-conviction relief in Shelby County Criminal Court under the Tennessee Post-Conviction Procedure Act.  *See* Tenn. Code Ann. §§ 40-30-101 to -122.  (ECF Nos. 16-14 at PageID 716–40; 16-15 at PageID 844–914.)  That court then appointed post-conviction counsel.  (ECF Nos. 16-15 at PageID 915; 16-16 at PageID 1057.)

At Petitioner's request, his appointed counsel did not amend the post-conviction petition. (ECF No. 16-16 at PageID 1058–59.)  The post-conviction court allowed Petitioner to represent himself at his evidentiary hearing with help from counsel.  (*Id.* at PageID 1069–70.)  After many evidentiary hearings, the post-conviction court denied Petitioner's request of relief in April 2016. (*Id.* at PageID 1068–82.)  As a result, Petitioner appealed (*id.* at PageID 1083), and the TCCA affirmed.  *Dockery v. State*, No. W2016-01239-CCA-R3-PC, 2017 WL 3225994, at *15 (Tenn. July 28, 2017).  Petitioner did not petition the Tennessee Supreme Court for discretionary review.

---

[2] At the victim's request, the State did not have a new trial on the aggravated kidnapping charge, leaving Petitioner with an effective sentence of fourteen years.  *Dockery v. State*, No. W2016-01239-CCA-R3-PC, 2017 WL 3225994, at *4 (Tenn. July 28, 2017), *no perm. app. filed*.

## II.    Federal Court Procedural History

In May 2018, Petitioner mailed his § 2254 Petition to the Court.  (ECF No. 1 at PageID

18–19.)  A month later, the Court directed Respondent to respond to the petition.  (ECF No. 6.)

In September 2018, Respondent filed the state court record and an answer to the petition (ECF

Nos. 16 & 17), and Petitioner replied in March 2019.  (ECF No. 26.)

### A.    Federal Habeas Issues

Petitioner raises these issues in the Petition:

1.    The evidence was insufficient to support Petitioner's conviction for aggravated assault.  (ECF No. 1 at PageID 6–8.)

2.    Petitioner's convictions for aggravated assault and stalking violate double jeopardy.  (*Id.* at PageID 9–10.)

3.    The trial court erred by admitting evidence of prior bad acts, violating Tennessee Rule of Evidence 404(b).  (*Id.* at PageID 11–12.)

4.    Trial counsel provided ineffective assistance by:

   a.    failing to investigate the warrantless search and arrest of Petitioner and by waiving Petitioner's preliminary hearing without his consent (*id.* at PageID 13),

   b.    failing to challenge the 911 calls played for the jury (*id.*),

   c.    failing to cross-examine the victim effectively (*id.*),

   d.    advising and coercing Petitioner not to testify (*id.*),

   e.    failing to object to improper statement that the State made during opening and closing arguments (*id.*),

   f.    failing to object to an incorrect jury instruction and failing to request a corrective instruction, and appellate counsel was ineffective by mentioning the issue in a footnote of the direct appeal brief instead of raising the issue as a substantive claim on direct appeal (*id.*), and

3

g.  raising frivolous issues in the motion for new trial.  (*Id.*)

5.  The State committed prosecutorial misconduct by:

a.  making untrue statements during its opening statement and by deceiving the jury during closing arguments (*id.* at PageID 15),

b.  telling the jury that the May 16 incident occurred after the court issued an order of protection, when the order of protection was issued on May 19 instead, three days after the assault (*id.*),

c.  ambushing and surprising Petitioner with five witnesses who were not listed on the indictment or disclosed before trial (*id.*), and

d.  failing to disclose exculpatory evidence and permitting witnesses to give false testimony.  (*Id.*)

Petitioner exhausted Issues 1, 4a–d, 4f–g, and 5b–d because the TCCA reviewed them.

But, as explained in more detail below, the procedural default doctrine bars Issues 2, 3, 4e, and

5a..  Next the Court will look at the trial court record including the evidence.

## III.  The Evidence

On direct appeal, the TCCA summarized the evidence presented at Petitioner's trial:

In September of 2009, Appellant was indicted by the Shelby County Grand Jury for aggravated assault, stalking, and aggravated kidnapping.  All three of the indictments arose after incidents that occurred during his relationship with the victim, Erica Craft.  Appellant and the victim first started dating in 2006.  Shortly thereafter, Appellant moved in with the victim at her residence on Percy Road.  The victim had four children.  Appellant is the father of the victim's daughter who was born on December 26, 2008.

On July 31, 2008, the victim called the police after coming home from work to find Appellant at the house with four or five of his friends.  At the time, the victim was pregnant.  She asked Appellant to ask his friends to leave the house.  Appellant became angry, was "in a rage" and proceeded to curse at the victim and call her names.  The victim was scared and threatened to call the police.  Appellant told the victim he would "beat" her.  Appellant left when the victim called the police.

When the police arrived, the victim provided a written statement outlining Appellant's threats.  Officer John Granberry with the Memphis Police Department responded to the call.  The victim was "really upset and screaming, crying . . . ."  However, she assured the police that she felt safe staying at the home.  The police were unable to locate Appellant at that time.  The victim refused an offer of transport from the police because Appellant reportedly "left without the key."  The police had the victim fill out a "hold harmless form."[3]  Appellant later called the victim to apologize, telling her he was "sorry for getting . . . carried away and he didn't mean any harm."  Appellant was allowed to return to the residence.

On February 6, 2009, Appellant and the victim got into another argument.  During the argument, the victim left the home with her children.  After she left the house, she realized that she forgot the baby formula at the house.  She returned home, leaving the children in the car in the driveway.  She entered the kitchen through the side door.  Appellant closed the door behind the victim and prohibited her from leaving the house.  According to the victim, Appellant "pushed" her against the door and "choked" her while the children were still outside in the car.  Appellant told a friend standing outside to bring the children into the house.  The friend brought the children into the house.  The victim said Appellant was "going crazy"; she told Appellant she was going to call the police.  Appellant left the house but returned before police arrived.  According to the victim, Appellant was "in a rage" and did not hit her but "raised his arm up" hitting the light fixture in the kitchen.  The light fixture fell and hit Appellant on the head.  Appellant ran from the house "screaming and hollering" and called his sister to come pick him up at the house.  The victim managed to call 911 twice during this altercation.

Officer Alvin Clark with the Memphis Police Department responded to the domestic violence call.  When he arrived, the inside of the home showed "disarray."  The victim was shaking and "very excited."  The police noticed blood droplets at the scene.  The victim explained that the blood belonged to Appellant.  The police took pictures of the marks around the victim's neck.  The victim's bruises took about a week to go away.

The victim wrote a statement describing the incident.  She stated the following:

> I walked in the door.  [Appellant] then closed the door behind me, locked it, and started to choke me saying, I'm going to give you what you want.  He then choked me again and pushed me down and picked me up to choke me again, threw me against the wall, pushed me down and kicked my side and tried to hit me.  But . . . when he raised his arm, he broke the light fixture.  It fell and

---

[3] At trial, one of the officers explained that a "hold harmless" form was a "form of instructions directed to the victim of domestic violence telling them their rights . . . [and offering] them transportation to a safe place, especially when the suspect is not in custody."

> busted his head and then he called his sister to come and take him to
> the hospital.  Before he left, he threw the phone—he threw my phone
> out [of] his pocket.  He took it during the fight so I couldn't call the
> police.  And took my rent money, $550, and left.

The victim declined transportation by police to another location.  She informed
authorities that one of her relatives would come to stay with her at the house.

Appellant later called and apologized for his behavior.  He explained that
he was angry because he thought the victim was with another man when she left to
go to her mother's house.  Again, the victim believed that Appellant was sincere in
his apology and let him back into the house.

In April of 2009, the victim finally left the relationship.  She moved to
Mississippi with her children to stay with a cousin.  The victim called Appellant
from Mississippi to tell him that their relationship was over and that she wanted to
"move on."  The victim wanted to get along with Appellant in the future because
of their daughter.  She informed Appellant that she had a new boyfriend.

On April 19, 2009, the victim and her new boyfriend, Curtis, were at the
victim's mother's house in Memphis picking up the victim's daughter.  Curtis
waited in the car in the driveway.  He saw Appellant pull into the driveway and
then pull out of the driveway.  The victim got back into the car with her daughter
and Curtis.  As they left her mother's house, the victim saw Appellant driving up
the street.  He was holding out his hand in an attempt to get the victim to stop her
car.  The victim kept driving.  Appellant drove up behind the victim and tried to
make her pull over.  He even rolled down his passenger-side window, trying to get
the victim to pull over.  The victim sped up to get in front of Appellant, and he
pulled in behind her and "rammed into the trunk of [her] car."  Appellant used his
vehicle to push the victim's car, causing her car to fishtail.

When the victim got to the red light, Appellant "rammed [her car] again
through the light."  In order to avoid being in the intersection, the victim had to "hit
the gas" and get out of the intersection because the light was red.  As Appellant
drove away, he hollered, "I'll catch you later, bitch.  And I'll whip your ass."
Appellant also threatened to "shoot [Curtis]" in the face.

The victim called the police again to report Appellant's behavior and then
stopped at the police precinct on Raines Road.  Officer Lee Walker was on duty
that night.  He heard a knock on the door.  When Officer Walker answered the door,
the victim was outside, "visibly upset" and crying.  The victim had her daughter
with her that night.  The victim reported the assault, telling Officer Walker about
Appellant's erratic behavior.  Officer Walker observed the damage to the victim's
vehicle and had the victim fill out a hold harmless form.  The victim issued another
statement in which she claimed:

> [M]y ex-boyfriend saw me driving past him and tried to stop me but
> I didn't stop.  He then followed me, rammed the back of my car, and
> tried to make me wreck.  My daughter was in the car with me also.
> . . . He pushed us through a red light and then hung out his window
> with a gun saying he was going to shoot me in the face.

An officer escorted the victim to the Mississippi state line.

The victim later obtained an ex parte order of protection against Appellant on April 22, 2009.  The order "restrained and prohibited [Appellant] from abusing, threatening to abuse, or committing acts of violence upon [the victim]."  The order was entered by the trial court on May 6, 2009, and set for a hearing on May 19, 2009.  The order of protection was served on Appellant on May 19, 2009. Following a hearing on the ex parte order, a one-year order of protection was issued. The order prohibited Appellant from calling, contacting, or otherwise communicating with the victim "directly or indirectly."  It also prohibited Appellant from coming to the victim's place of employment or residence for any purpose. Appellant was also prohibited from "possessing, shipping, receiving, or transporting a firearm or ammunition."

The victim had to pay to replace the bumper on her car and to prime and paint the trunk after Appellant's actions.

On May 1, 2009, the victim and her children moved into a house on East Biscayne in Shelby County.  On May 15, 2009, Appellant called the victim and made plans to pick up his daughter.

Appellant did not show up to pick up the child but later called the victim and asked her to go downtown with him to talk about visitation arrangements.  The victim complied.  When the victim and Appellant returned to the victim's house, she allowed Appellant to come inside and watch television.  The victim fell asleep on the couch.  While she was asleep, Appellant looked through her phone.  When the victim woke up, Appellant was "trying to have sex" with her.  The victim refused.  Appellant started yelling and screaming at the victim; he accused her of sleeping with another man and read some of the victim's text messages to Curtis. Appellant pushed the victim down a hallway and into her daughter's bedroom. Appellant hit the victim in the face.  As a result, she fell onto the bed.  Appellant told her he was "fixing to beat [her]."

At that point, Appellant got on top of the bed.  He stomped the victim in the face, kicked her in the chest, and hit her in the face with his fist.  The victim tried to cover her face during the ordeal.  Appellant told the victim he was "fixing to kill [her]" as he continued to read text messages from the victim's phone.  Appellant eventually pushed the victim back on the bed and left the room "screaming" and "hollering."

The victim got into the corner of the room because there was no way to leave the room.  Appellant entered and exited the room several times.  She then heard Appellant open the front door.  Then she heard him close it and lock it.  The victim could not leave the house after Appellant left the bedroom because there was only "one way in, one way out."

Appellant came back into the room at some point and pushed the victim back onto the bed.  Appellant grabbed a steel lamp and hit the victim in the temple on the right side of her head.  The victim fell down, and Appellant hit her again.  Appellant picked up a television.  The victim begged him for her life after Appellant told her he was going to kill her.  Appellant put the television down and instead hit the victim with his fists.  He broke her nose.

The victim promised that she would not call the police.  He instructed her to clean herself up, especially her face.  Appellant left the house shortly thereafter.  The victim was able to run to the front door and lock it.  She was unable to find her car keys or her cell phone.  Appellant stood outside the house at the window watching her and yelling at her.  The victim felt as though she was unable to leave her own home.

The victim waited until Appellant left in his truck before she went outside.  Her car keys and cell phone were on the front lawn.  The cell phone battery was broken.  The victim was able to drive her car to her mother's house where she called the police.  The victim first reported that Appellant followed her home from the gas station.  She later admitted that this was not true.  She lied because she did not want her family to know that she was still talking to Appellant.

Officer Kebena Cash of the Memphis Police Department responded to the residence on Jeff Drive the night of May 16, 2009.  Upon her arrival, she noticed the victim had suffered injuries to her face and nose.  The victim was "shaking" and "afraid."  The victim's statement revealed the following:

> [Appellant] followed me home . . . [he] pushed me down the hallway into my daughter's room and he pushed me on [the] bed.  He then stood over me and began to . . . punch me . . . with his fist in my face.  He started to kick me and punch me in my face.  He picked up a lamp and struck me in my face with it.  He locked the doors and took my cell phone so I couldn't call anyone.

The victim suffered injuries as a result of Appellant's behavior, specifically, bruises on her nose, chest, face, and arms.  The victim also had a broken nose, swollen mouth, and knots on her head.  The victim was unable to work for two weeks as a result of Appellant's behavior.

Appellant was located by authorities hiding in the attic of a residence at an address provided by the victim.  When the officers approached Appellant, he

8

claimed he "didn't do anything to her.  I'm sure she done made something up."  After being arrested, Appellant became belligerent, shouting threats and insisting he would "get" the victim when he got out of jail.  Appellant even slammed his fists against his hands.

At the conclusion of the trial, a jury found Appellant guilty of aggravated assault, stalking, and aggravated kidnapping.  The trial court sentenced Appellant as a Range II offender for aggravated kidnapping and as a Range III offender for aggravated assault.  The trial court sentenced Appellant to fourteen years at forty-five percent for aggravated assault, twenty years at 100 percent incarceration for aggravated kidnapping, and eleven months and twenty-nine days for stalking.  The trial court ordered the sentences for aggravated kidnapping and aggravated assault to run consecutively, finding that Appellant had an extensive history of criminal activity and was a dangerous offender.

Appellant filed a motion for new trial prior to sentencing.  He later filed an amended motion for new trial through counsel and several pro se motions for new trial.  After a hearing, the trial court denied the motions for new trial.  Appellant sought an appeal.  On appeal, Appellant argues:  (1) the evidence was insufficient to support the convictions; (2) the trial court erred by failing to instruct the jury as mandated in *State v. White*, 362 S.W.3d 559 (Tenn. 2012); (3) double jeopardy bars Appellant's convictions for aggravated assault and stalking; and (4) the trial court improperly admitted evidence of prior bad acts in violation of Tennessee Rule of Evidence 404(b).

*State v. Dockery*, 2014 WL 172379, at *1–5.

Next the TCCA opinion on post-conviction appeal summarized Petitioner's ineffective assistance of counsel and prosecutorial misconduct claims.  *Dockery v. State*, 2017 WL 3225994, at *5–10.  The TCCA also summarized the evidence from the post-conviction hearing and the post-conviction trial court's decision:

After our supreme court denied the Petitioner's application for permission to appeal, he filed a timely pro se petition for post-conviction relief, alleging six main issues:  (1) that he was denied the effective assistance of counsel because trial counsel waived his preliminary hearing without his consent; (2) that he was denied the effective assistance of counsel because trial counsel failed to conduct an adequate investigation and prepare a viable defense theory; (3) that he was denied the effective assistance of counsel because trial counsel instructed him not to testify; (4) that the State violated his right to due process by making extraneous, false, and misleading comments during its opening statement and throughout trial; (5) that the State violated his right to due process by presenting false evidence and testimony at trial; and (6) that he was denied the effective assistance of counsel on

direct appeal of his convictions due to "inadequate briefing." Within each main issue, the Petitioner raised numerous sub-issues. The post-conviction court appointed counsel, and counsel did not file an amended petition for post-conviction relief.

The post-conviction court held four evidentiary hearings in 2015. During the first hearing on May 5, post-conviction counsel advised the court that the Petitioner was "dissatisf[ied]" with counsel's representation and that counsel was "really here as elbow counsel." Counsel then called the Petitioner to the stand and questioned him about his pro se petition.

The Petitioner testified that post-conviction counsel wanted to file an amended petition for post-conviction relief and that he researched the two issues counsel wanted to raise. The first issue already had been determined by this court, and the second issue "was already in a consolidated petition." Therefore, the Petitioner decided to rely on the issues he raised in his pro se petition.

The Petitioner testified that he retained trial counsel and that counsel waived his right to a preliminary hearing without his consent. The Petitioner said he should have had a hearing because "they" would have seen that his case was based on lies, not probable cause. The Petitioner was on bond while awaiting trial and talked with trial counsel at counsel's office several times. He told trial counsel that the police arrested him without a warrant at the home of his then-girlfriend, Artricia Polk. However, trial counsel was "totally nonchalant about the whole deal" and should have challenged the illegal search and arrest. Trial counsel also should have interviewed the Petitioner's alibi witness, Polk. Trial counsel told the Petitioner that "no defense will be the best defense" and did not file any pretrial motions. The Petitioner said counsel should have filed a motion for a bill of particulars and a notice of alibi. Trial counsel also failed to challenge the State's introduction of 911 calls involving previous assaults on the victim; failed to cross-examine the victim effectively after she gave inconsistent testimony on direct examination; and failed to object to the State's "ambush" witnesses, who were not listed on the indictment.

The Petitioner testified that before trial, he and counsel discussed whether he should testify and that counsel told him the jury would find him guilty, "at a maximum," of simple assault. Trial counsel told the Petitioner that he could testify, and the Petitioner planned to do so. After the State rested its case, though, counsel advised him not to testify. When the jury convicted the Petitioner, he realized he had made a mistake by not testifying.

The Petitioner acknowledged that his pro se petition alleged the State made "extraneous, false, and misleading statements" during its opening statement and throughout trial. However, the Petitioner never had access to a transcript of opening statements because the attorney who represented him in his motion for new trial never requested the transcript. The State also introduced "unfounded and unindicted charges" into evidence in violation of Tennessee Rule of Evidence

404(b).  Specifically, the State introduced evidence that the Petitioner had been arrested for, but not convicted of, intimidation in 2008, assault in 2009, and attempted murder in 2009.  Trial counsel did not object to the improper evidence, request a curative instruction, or request a mistrial.  The Petitioner raised the issue in his motion for new trial, but appellate counsel did not raise the issue on direct appeal of the Petitioner's convictions.

The Petitioner acknowledged that his pro se petition also alleged the State presented false evidence and testimony at trial.  For example, the State introduced into evidence a photograph of the lamp allegedly used by the Petitioner to assault the victim in her home on East Biscayne; however, the photograph was actually taken of a lamp that was in the residence on Jeff Drive.  The victim testified falsely about the lamp, and counsel should have made her false testimony clear to the jury.

The Petitioner alleged in his petition that the State misled the jury regarding an order of protection that was issued against him.  He testified that the order was issued on May 19, 2009, three days after he allegedly assaulted the victim.  Therefore, the order of protection was irrelevant to the crimes for which he was on trial.  Nevertheless, the State introduced the order of protection into evidence at trial, and counsel did not object or raise the issue on direct appeal of the Petitioner's convictions.

The Petitioner testified that after the jury convicted him, he retained new counsel to represent him at sentencing and for his motion for new trial.  Newly hired counsel failed to "perfect" the Petitioner's motion for new trial and failed to address in the motion another double jeopardy claim, the false evidence presented by the State, incorrect jury instructions, and improperly admitted photographs of the victim's injuries.  After the trial court denied the Petitioner's motion for new trial, the court appointed appellate counsel for the direct appeal of the Petitioner's convictions.  Appellate counsel failed to "perfect" the Petitioner's appellate brief and failed to raise as error that the trial court improperly instructed the jury on the improperly admitted photographs.

At the conclusion of the Petitioner's testimony, he stated that he wanted to add several issues to his petition for post-conviction relief.  First, the State referred to the Petitioner's prior bad acts during its opening statement, and trial counsel failed to object.  Second, the trial court "chastised" the Petitioner in front of the jury during opening statements.  The Petitioner requested that the post-conviction court have the opening statements and closing arguments transcribed and made part of the post-conviction record.  At that point, the post-conviction court, which was also the trial court, noted that the Petitioner "was misbehaving [during opening statements], and I asked him not to, and the jury was present."  The post-conviction court stated that it would be "glad" to have the opening statements and closing arguments transcribed and made an exhibit at a later date.  Finally, the Petitioner claimed that the State improperly advised the jury during its closing arguments "to discard [the victim's] lie" and that trial counsel made impermissible comments

during closing arguments by "putting [the Petitioner] on the scene of a crime that [he] never was at."

On cross-examination, the Petitioner acknowledged that he hired trial counsel to represent him, that trial counsel had represented him previously, and that he was satisfied with trial counsel's prior representation. He also acknowledged having numerous prior "dealings" with the criminal justice system. The State asked if the Petitioner knew his case was set for a July 10, 2009 preliminary hearing. He said counsel told him that his case was going to be "reset" and that "you'll get your court date in the mail." The Petitioner said he thought his case had been dismissed but that the State might indict him "or something."

The Petitioner testified that he met with trial counsel two or three times in person before trial but that they primarily communicated about his case on the telephone. During jury selection, the Petitioner told trial counsel that Artricia Polk was willing to testify that he was home with her at the time of the alleged assault and kidnapping on May 16. He said he did not subpoena her to the post-conviction hearing because he "wouldn't dare put nobody up on this stand to be criticized and chastised by this courtroom."

The Petitioner acknowledged that trial counsel received discovery and provided him with a copy of discovery materials. He also acknowledged that trial counsel told him information about his prior felony convictions would "come out" if he testified. During a jury-out hearing at trial, the Petitioner told the trial court that he chose to follow counsel's advice and not testify. After trial, though, he wished he had testified.

The Petitioner testified that during opening statements, the prosecutor told the jury that the Petitioner had been arrested for prior incidents involving the victim in July 2008, February 2009, and April 2009, which was "a lie" because he was not arrested until May 16, 2009. The Petitioner acknowledged that he made objections "out loud" to the prosecutor's opening statement and that his objections were inappropriate. He said he continued to make objections "[d]ue to prosecutorial misconduct." The Petitioner said that the trial court "instructed" him twice in front of the jury. The court then had the jury step out of the courtroom and advised the Petitioner that he would have to be quiet in order to remain in the courtroom. The Petitioner agreed to be quiet.

The State asked the Petitioner if he understood that proof of the prior assaults was necessary in order for the State to prove the stalking charge. He answered that [when] the victim testified she lied about the stalking; therefore, the trial court should have held a Rule 404(b) hearing to determine whether evidence of the other assaults was admissible. He said that appellate counsel raised only one double jeopardy claim but that there were two claims. The second claim involved an improper jury instruction concerning the jury's consideration of the February 2009 incident as evidence of the May 16, 2009 assault.

The Petitioner testified that during closing arguments, trial counsel told the jury that "I don't know what happened in that house . . . [on] Biscayne" and that the victim should have died if what she claimed was true. The Petitioner said that counsel's argument was improper because it put him at the crime scene when he was never there and that counsel's argument sounded like counsel was representing the victim.

On June 11, 2015, the post-conviction court held a second evidentiary hearing. At the outset of the hearing, post-conviction counsel announced that the Petitioner wanted to call the prosecutor to testify and that the Petitioner had prepared a multi-page list of questions he wanted post-conviction counsel to ask the prosecutor. Counsel stated that he thought the questions were "totally inappropriate and totally irrelevant" and that he was asking the court "for some guidance." The court answered that the Petitioner had a right to call witnesses, confront them, and ask questions; therefore, post-conviction counsel needed to ask the questions, and the court would rule on them if the State objected. The State objected to many of the questions, and the post-conviction court sustained most of them.

Nevertheless, the prosecutor was allowed to testify that she had been employed by the Shelby County District Attorney's Office since 2006 and represented the State at the Petitioner's trial. The State did not retry the Petitioner for aggravated kidnapping because the victim did not want to testify again. The prosecutor stated that she talked with the victim several times and that "[u]ltimately, that was [the victim's] decision." She said that the Petitioner's stalking charge was based on several incidents and that a defendant's sharing a lease or living with a victim did not preclude the defendant from being guilty of stalking. The victim had obtained an order of protection against the Petitioner, and he should not have been near her.

The prosecutor testified that she did not coerce the victim. The victim told the prosecutor that the victim had lied to the police on May 16, 2009, by telling them the Petitioner had followed her home. The victim said she lied because she did not want her mother to know she had allowed the Petitioner to spend the night. The victim cried when she told the prosecutor about the lie, and the prosecutor reported the lie to trial counsel. The victim told the jury on direct examination that she lied to the police, and trial counsel cross-examined the victim "vigorously" about the lie. During the victim's redirect examination testimony, she explained to the jury that she lied because she did not want her family to be upset with her. During closing arguments, the prosecutor told the jury to find the Petitioner guilty as charged because the victim was truthful on the stand and because the victim explained to the jury why she had been untruthful to the police. Photographs showed the victim's injuries, and the prosecutor believed the victim had been truthful about being stalked by the Petitioner. The prosecutor said she [did] not think a comment to the jury that the victim had no reason to lie was improper.

On cross-examination, the prosecutor testified that she handled the Petitioner's preliminary hearing on July 10, 2009. The victim was present and ready to testify, but the Petitioner chose to waive the hearing. An ex parte order of protection against the Petitioner had been issued on May 6, 2009, and the prosecutor had a copy of the order added to the Petitioner's case file during the hearing.

The prosecutor testified that she addressed the victim's lie to the police "head-on" at trial. The prosecutor thought the victim was truthful about all the other incidents, and photographs of the victim's injuries supported the victim's testimony. The State rested its case against the Petitioner in the afternoon, and the trial court recessed the trial overnight so that the Petitioner could assess the State's proof and talk with trial counsel about testifying. The next morning, the trial court held a *Momon* hearing. During the hearing, the trial court questioned the Petitioner, and the Petitioner said it was his decision not to testify. The prosecutor said that the Petitioner had prior felony convictions and that she would have impeached him with the convictions if he had testified.

Trial counsel testified for the Petitioner that he had been an attorney for more than thirty years. He said he represented the Petitioner at the preliminary hearing, which was waived, and that "I don't know how I could have waived it without his consent." The Petitioner complained to trial counsel that he had been arrested without a warrant, and counsel told him that the police did not necessarily need a warrant for an arrest. Counsel said that he did not think the manner in which the Petitioner was arrested had anything to do with the Petitioner's case and that he did not challenge the arrest because the police had probable cause to arrest the Petitioner.

Trial counsel acknowledged that the trial court admonished the Petitioner in front of the jury. Counsel said he did not request a mistrial because he did not think the court would grant a mistrial for the Petitioner's own behavior. He said he did not remember the Petitioner's mentioning an alibi or Artricia Polk to him. The Petitioner did not think the victim would show up for trial. When trial counsel learned the victim had lied to the police, he "tried to really focus on that area" and use it to argue she lied about "the whole thing."

Trial counsel testified that he did not make an opening statement at trial. He explained that the Petitioner did not give him the names of any witnesses, so counsel did not have any witnesses to refute the State's opening statement. He said that in his thirty years of practicing law, he had not made an opening statement in only three or four cases.

Trial counsel testified that the State provided him with all of the discovery materials in the case and that he was sure he objected to the State's introduction of prior bad acts. He said he did not know if he objected to the State's introducing the order of protection into evidence but that the order did not specify any wrongdoing

by the Petitioner. Trial counsel probably did not object to the State's introducing the 911 calls into evidence because the calls were admissible as an exception to the hearsay rule. Regarding trial counsel's stating during his closing argument that the Petitioner was at the Biscayne address and that the victim should have died, counsel said, "It was just part of my closing." He acknowledged that the Petitioner had filed many complaints against him.

On cross-examination, trial counsel testified that he represented the Petitioner until the Petitioner's sentencing hearing. He acknowledged that he would have discussed the "pros and cons" of waiving a preliminary hearing with the Petitioner and that it was not unusual to waive a hearing. One of the reasons to waive a hearing was to "preserve" a defendant's bond. A defendant had to "sign the papers" to waive the hearing, and the Petitioner signed the waiver in this case and remained on bond pending trial. The Petitioner's trial originally was set for September 9, 2009. However, the Petitioner did not show up for trial, was arrested, and remained in custody. Although the Petitioner did not think the victim would show up for trial, trial counsel had spoken with her and told the Petitioner that he thought the victim would cooperate with the State. Trial counsel acknowledged that the victim's lie to the police was a "strong point" for the defense and that he vigorously cross-examined her.

Trial counsel denied promising the Petitioner a specific outcome at trial. He said that the Petitioner had a couple of "outbursts" during the trial and that "[a]t that point I told him he probably lost our trial." The trial court admonished the Petitioner in front of the jury, and the Petitioner "calmed down after the second time." Counsel and the Petitioner discussed the Petitioner's right to testify. However, counsel was concerned about the Petitioner's criminal history and whether the Petitioner could "handle himself" on the stand. The Petitioner chose not to testify.

The trial court held a third hearing on July 9, 2015. During the hearing, the Petitioner acknowledged that he was testifying in order to refute the testimony of the prosecutor and trial counsel. Regarding trial counsel's testimony, the Petitioner testified that trial counsel was not adequately prepared to defend him because counsel failed to file any motions, "bring out" inconsistencies in the testimony of the State's witnesses, or conduct a Rule 404(b) hearing regarding prior bad acts. The Petitioner stated that despite the fact that trial counsel "got up here and testified" that he objected to 404(b) evidence, this court noted in its opinion of the direct appeal of the Petitioner's convictions that trial counsel did not object. The State also was allowed to introduce exhibits one and two regarding prior bad acts into evidence. The Petitioner stated that trial counsel should have compared the victim's "prior reports" to her trial testimony in order to impeach the victim. For example, the victim had claimed that the Petitioner said he was going to kill her; however, she testified on direct examination that she never made such a claim.

Regarding the prosecutor's testimony, the Petitioner testified that the prosecutor used false evidence, perjured testimony, prior bad acts, and a "[f]ake lamp" to convict him. She also used the testimony of the police officer who arrested him on May 16 to mislead the jury and used the victim's lies to deceive the jury.

The Petitioner testified that his second attorney, who represented him at his sentencing and motion for new trial hearings, was ineffective because the attorney "did not file for a complete trial transcript to inspect for reversible errors"; did not raise an issue regarding Tennessee Rule of Evidence 404(b); and included "a lot of frivolous claims" in the Petitioner's motion for new trial. At the conclusion of the Petitioner's testimony, the post-conviction court scheduled a fourth evidentiary hearing so that appellate counsel and Officer Kebena Cash could be subpoenaed.

During the fourth hearing on September 1, 2015, the Petitioner advised the post-conviction court that he needed Officer Cash and appellate counsel to testify in order to refute the prosecutor's testimony. He said that although he had not talked with Officer Cash, Officer Cash would testify that he was unaware of the lamp introduced into evidence and that the alleged weapon was not found at the crime scene. Post-conviction counsel advised the court that Officer Cash was no longer with the Memphis Police Department, and the court asked if the Petitioner knew how to locate the officer for a subpoena. The Petitioner said no but that he was looking for Officer Cash. Regarding appellate counsel, the Petitioner stated that appellate counsel would "testify to the misstatement of facts that he stated concerning the claim that should have been brought up that he didn't bring up."

The post-conviction court stated that Officer Cash could not be subpoenaed because he could not be located. The court noted that appellate counsel had moved out of Tennessee but stated that it did not need appellate counsel's testimony because "the facts which the defendant . . . says would force [appellate counsel] to admit that he was wrong are self-evident."

More than seven months later, on April 8, 2016, the post-conviction court filed an order denying the petition for post-conviction relief. In the order, the court addressed seven allegations of ineffective assistance of counsel and five allegations of prosecutorial misconduct. Concerning the claims of ineffective assistance of counsel, the court rejected the Petitioner's claims that counsel was ineffective for waiving the preliminary hearing, failing to investigate the case and present an alibi defense, failing to challenge the admissibility of the 911 calls played at trial, failing to cross-examine the victim effectively, advising the Petitioner not to testify, failing to emphasize to the jury that the victim admitted making false allegations against the Petitioner and tried to hide their relationship from her mother, and failing to raise issues on appeal. Regarding the claims of prosecutorial misconduct, the court rejected the Petitioner's claims that the State improperly discussed the Petitioner's prior bad acts during opening statement and closing arguments, introduced false evidence at trial, misled the jury regarding the order of protection, "ambushed" the

Petitioner by calling five witnesses not listed on the indictment or disclosed pretrial, and failed to disclose exculpatory evidence.

*Dockery v. State*, 2017 WL 3225994, at *5–10.

Now this Court will analyze the claims here.

## LEGAL STANDARDS

For starters, federal courts may issue habeas corpus relief for persons in state custody under 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). But a federal court has limited authority and may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

## I.      Exhaustion and Procedural Default

That said, a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has exhausted available state remedies. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). Under 28 U.S.C. § 2254(b) and (c), a petitioner must present to the state courts the same claim for which he seeks redress in a federal habeas court. *Id.* That means the petitioner must "fairly present"[4] each claim to all levels of state court review, up to the state's highest court on discretionary review. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004). But a petitioner need not present to all levels of the state court if the state has explicitly disavowed state supreme court review as an available state remedy. *O'Sullivan v. Boerckel*, 526 U.S. 838, 847–48 (1999).

---

[4] To exhaust each claim, "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts, or that a somewhat similar state-law claim was made." *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam) (internal citation omitted). Nor is it enough to make a general appeal to a broad constitutional guarantee. *Gray v. Netherland*, 518 U.S. 152, 163 (1996).

Tennessee has done that.  Indeed, Tennessee Supreme Court Rule 39 eliminated the need to seek review in the Tennessee Supreme Court.  *Adams v. Holland*, 330 F.3d 398, 402 (6th Cir. 2003).  Under Rule 39, "once the Court of Criminal Appeals has denied a claim of error, 'the litigant shall be deemed to have exhausted all available state remedies.'"  *Id.* (quoting Tenn. Sup. Ct. R. 39); *see also Smith v. Morgan*, 371 F. App'x 575, 579 (6th Cir. 2010).

There is also a procedural default doctrine much like the exhaustion requirement.  *See Edwards v. Carpenter*, 529 U.S. 446, 452–53 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine).  Say the state court decides a claim on an independent and adequate state ground (such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim), the procedural default doctrine ordinarily bars a petitioner from seeking federal habeas review.  *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citation omitted)).[5]  In general, a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule."  *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013).

If the procedural default doctrine bars a claim at the state level, the petitioner has to show cause to excuse his failure to present the claim.  *Schlup v. Delo*, 513 U.S. 298, 320–21 (1995);

---

[5] The state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits.  *Walker*, 562 U.S. at 315.  A state rule is an "adequate" procedural ground if it is "firmly established and regularly followed."  *Id.* at 316 (quoting *Beard v. Kindler*, 558 U.S. 53, 60–61 (2009)).  "A discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others."  *Id.* (quoting *Kindler*, 558 U.S. at 60–61.) (internal quotation marks and citations omitted).

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).  And he must show (1) actual prejudice stemming from the constitutional violation, or (2) that a failure to review the claim will lead to a fundamental miscarriage of justice.  *Schlup*, 513 U.S. at 320–21.  In that sense, the petitioner must show that a constitutional error has probably led to the conviction of a person who is actually innocent of the crime.  *Id.* at 321; *see also House v. Bell*, 547 U.S. 518, 536–39 (2006) (restating the ways to overcome procedural default and further explaining the actual innocence exception).  With this in mind, the Court now looks to the legal standards for considering the merits of Petitioner's claims.

## II.   Merits Review

Under Section 2254(d), where a state court decided a claim on the merits, a court should only grant a habeas petition if resolving the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).  Petitioner carries the burden of proof on this "difficult to meet" and "highly deferential [AEDPA] standard," which "demands that state-court decisions be given the benefit of the doubt."  *Cullen*, 563 U.S. at 181 (quoting *Harrington v. Richter*, 562 U.S. 86, 102 (2011) and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)).

Under § 2254(d)(1), the court limits its review to the record used by the state court to adjudicate the claim on the merits.  *Cullen*, 563 U.S. at 181.  A state court's decision is "contrary" to federal law when it "arrives at a conclusion opposite to that reached" by the Supreme Court on a question of law or "decides a case differently than" the Supreme Court has "on a set of materially indistinguishable facts."  *Williams v. Taylor*, 529 U.S. 362, 412–13

(2000). An "unreasonable application" of federal law occurs when a state court "identifies the correct governing legal principle from" the Supreme Court's decisions, "but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 412–13. So the state court's application of clearly established federal law must be "objectively unreasonable" for the writ to issue. *Id.* at 409. And the habeas court may not issue the writ just because, "in its independent judgment," it determines that the "state court decision applied clearly established federal law erroneously or incorrectly." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (citing *Williams*, 529 U.S. at 411) (internal quotation marks omitted).

There is little case law addressing whether, under § 2254(d)(2), a state court based a decision on "an unreasonable determination of the facts." In *Wood v. Allen*, the Supreme Court noted that a state-court factual determination is not "unreasonable" only because the federal habeas court would have reached a different conclusion.[6] 558 U.S. 90, 301 (2010). In *Rice v. Collins*, the Court explained that "[r]easonable minds reviewing the record might disagree" about the factual finding in question, "but on habeas review that does not suffice to supersede the trial court's . . . determination." 546 U.S. 333, 341–42 (2006).

The Sixth Circuit has described the § 2254(d)(2) standard as "demanding but not insatiable" and has emphasized that, under § 2254(e)(1), the federal court presumes that the state court's factual determination is correct absent clear and convincing evidence to the contrary. *Ayers v. Hudson*, 623 F.3d 301, 308 (6th Cir. 2010). A federal court will not overturn a state

---

[6] In *Wood*, the Supreme Court granted certiorari to resolve whether, to satisfy § 2254(d)(2), "a petitioner must establish only that the state-court factual determination on which the decision was based was 'unreasonable,' or whether § 2254(e)(1) additionally requires a petitioner to rebut a presumption that the determination was correct with clear and convincing evidence." *Wood*, 558 U.S. at 299. The Court found it unnecessary to reach that issue, and left it open "for another day." *Id.* at 300–01, 304 (citing *Rice v. Collins*, 546 U.S. 333, 339 (2006) (recognizing that it is unsettled whether there are some factual disputes to which § 2254(e)(1) does not apply)).

20

court adjudication on factual grounds unless objectively unreasonable given the evidence presented during the state court proceeding.  *Id.*; *see also Hudson v. Lafler*, 421 F. App'x 619, 624 (6th Cir. 2011) (same).

The Court next will address the legal standards for Petitioner's claims of ineffective assistance of counsel.

## III.   Ineffective Assistance

### A.   Right to Effective Assistance of Counsel

The standards from *Strickland v. Washington*, control a claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel.  466 U.S. 668, 687 (1984).  To succeed on this claim, a movant has to prove two elements: (1) that counsel's performance was deficient, and (2) "that the deficient performance prejudiced the defense."  *Id.* "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."  *Id.* at 686.

Plus the Sixth Circuit noted recently that this standard is "even more difficult to meet in habeas cases, where the review that applies to *Strickland* claims is 'doubly deferential.'"  *Tackett v. Trierweiler*, 956 F.3d 358, 373 (6th Cir. 2020) (citing *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009)).  "The question is not whether a federal court believes the state court's determination under the *Strickland* standard was incorrect but whether that determination was unreasonable—a substantially higher threshold."  *Id.* (internal quotation marks and citation omitted).

To prove deficient performance, a person challenging a conviction "must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 688.  A court considering a claim of ineffective assistance applies a "strong presumption"

that counsel's representation was within the "wide range of reasonable professional assistance." *Id.* at 689.  The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  *Id.* at 687.

To show prejudice, a petitioner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id.* at 694.[7]  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  *Id.* at 694.  And "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  Instead, counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."  *Id.* at 687;  *see also Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) (stating "*Strickland* does not require the State to 'rule out'" a more favorable outcome to prevail, but "places the burden on the defendant, not the State, to show a reasonable probability that the result would have been different." (internal quotation marks omitted)).  When a petitioner brings a claim in federal court, his burden is even harder to meet.

A federal court's deference to a state-court decision under 28 U.S.C. § 2254(d) increases when reviewing an ineffective assistance claim.  Consider this quote from the Supreme Court's opinion in *Harrington*:

> Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult.  The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions

---

[7] If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient.  *Strickland*, 466 U.S. at 697.

> were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard.

562 U.S. at 105 (internal citations and quotation marks omitted).

### B.      Right to Effective Assistance of Counsel on Appeal

A criminal defendant is entitled to effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985).  But counsel's failure to raise a nonfrivolous issue on appeal does not constitute per se ineffective assistance.  The Supreme Court has held the "process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy."  *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted).  So courts evaluate claims of ineffective assistance of appellate counsel using the *Strickland* standards.  *See Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Murray*, 477 U.S. at 535–36 (applying *Strickland* to appellate counsel's failure to raise issue on appeal).  This means that, to establish that appellate counsel was ineffective, a prisoner:

> must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal - that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them.  If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice.  That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Robbins*, 528 U.S. at 285 (citation omitted).[8]

---

[8] The Sixth Circuit has identified a nonexclusive list of factors to consider when assessing claims of ineffective assistance of appellate counsel:

1.      Were the omitted issues "significant and obvious?"
2.      Was there arguably contrary authority on the omitted issues?
3.      Were the omitted issues clearly stronger than those presented?
4.      Were the omitted issues objected to at trial?
5.      Were the trial court's rulings subject to deference on appeal?

For these reasons, it is difficult to prove a deficient performance by appellate counsel who chooses to raise one issue on appeal, rather than another. *See id.* "In such cases, the petitioner must demonstrate that the issue not presented was clearly stronger than issues that counsel did present." *Matthews v. Parker*, 651 F.3d 489, 523 (6th Cir. 2011), *rev'd on other grounds*, 567 U.S. 37 (2012). And the petitioner must also show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Unlike the direct appeal, in the post-conviction context, there is no right to counsel. Put differently, when the direct appeals ends, so does the right to counsel. In *Coleman v. Thompson*, the Supreme Court found that "[t]here is no constitutional right to an attorney in state post-conviction proceedings." 501 U.S. at 752 (internal citations omitted). As a result, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *Id*. What is more, attorney error cannot constitute "cause" for a procedural default "because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must bear the risk of attorney error." *Id.* at 753 (internal quotation marks omitted). So when the state has no constitutional obligation to ensure that a prisoner has competent counsel, the petitioner bears the risk of attorney error. *Id.* at 754.

---

6.   Did appellate counsel testify in a collateral proceeding as to his appeal strategy and, if so, were the justifications reasonable?
7.   What was the appellate counsel's level of experience and expertise?
8.   Did the petitioner and appellate counsel meet and go over possible issues?
9.   Is there evidence that counsel reviewed all the facts?
10.  Were the omitted issues dealt with in other assignments of error?
11.  Was the decision to omit an issue an unreasonable one which only an incompetent attorney would adopt?

*Franklin v. Anderson*, 434 F.3d 412, 429 (6th Cir. 2006) (citation omitted).

There is, however, a narrow exception to the rule in *Coleman*.  In *Martinez v. Ryan*, the Supreme Court considered an Arizona law that did not permit petitioners to raise ineffective assistance claims on direct appeal.  566 U.S. 1, 6 (2012).  The Court held that, "[w]here, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance [of counsel] at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective."  *Id.* at 17.  The Supreme Court also emphasized that "[t]he rule of *Coleman* governs in all but the limited circumstances recognized here," and "[i]t does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons."  *Id.* at 16.

> To excuse a procedural default under *Martinez*, a petitioner must show that:
>
> (1) the claim of ineffective assistance of trial counsel was a substantial claim; (2) the cause consisted of there being no counsel or only ineffective counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the initial review proceeding in respect to the ineffective-assistance-of-trial-counsel claim"; and (4) state law *requires* that an  ineffective assistance of trial counsel [claim] . . . be raised in an initial-review collateral proceeding."

*Trevino v. Thaler*, 569 U.S. 413, 423 (2013) (internal quotations and citations omitted).  And, in *Trevino*, the Supreme Court extended its *Martinez* holding to states which have a "state procedural framework, by reason of its design and operation, [that] makes it highly unlikely in a typical case that a defendant will have a meaningful opportunity to raise a claim of ineffective assistance of trial counsel on direct appeal . . . ."  569 U.S. at 429.  Thus, *Trevino* modified the fourth *Martinez* requirement for overcoming a procedural default.  What is more, the Sixth

Circuit has found that both *Martinez* and *Trevino* apply to Tennessee prisoners.  *Sutton v. Carpenter*, 745 F.3d 787, 790 (6th Cir. 2014).

The Court now considers Petitioner's § 2254 claims.

## ANALYSIS OF PETITIONER'S CLAIMS

I.      **Issue One: The Evidence Could not Support Petitioner's Convictions for Aggravated Assault**

On direct appeal to the TCCA, Petitioner argued that the lamp he allegedly used to hit the victim was not a deadly weapon.[9]  (ECF No. 1 at PageID 6–7.)  He makes that same argument again here.  In response, Respondent argues that the TCCA applied the correct federal rule and that its decision was correct.  (ECF No. 17 at PageID 1639.)  This Court agrees with Respondent.

After reviewing the evidence presented at trial, the TCCA considered Petitioner's argument that the lamp was not a deadly weapon.  (*See* ECF No. 16-8 at PageID 492–94.)  The TCAA explained:

> When a defendant challenges the sufficiency of the evidence, this Court is obliged to review that claim according to certain well-settled principles.  A verdict of guilty, rendered by a jury and "approved by the trial judge, accredits the testimony of the" State's witnesses and resolves all conflicts in the testimony in favor of the State.  *State v. Cazes*, 875 S.W.2d 253, 259 (Tenn. 1994) (citing *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)).  Thus, although the accused is originally cloaked with a presumption of innocence, the jury verdict of guilty removes this presumption "and replaces it with one of guilt."  *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982).  Hence, on appeal, the burden of proof rests with the defendant to demonstrate the insufficiency of the convicting evidence.  *Id.*  The relevant question the reviewing court must answer is whether any rational trier of

---

[9] Petitioner refers to the lamp as "phony and fake evidence."  (ECF No. 1 at PageID 7.)  He did not raise this argument as a challenge to the sufficiency of the evidence on direct appeal.  Instead, Petitioner contended in the post-conviction appeal that the prosecutor committed prosecutorial misconduct by introducing photographs of the lamp, which Petitioner claims were "false evidence."  (ECF No. 16-22 at PageID 1502–03.)  But based on the record, the photographs that the prosecutor admitted as evidence during the trial were of the victim's injuries—not of the lamp.  (ECF No. 16-4 at PageID 385–91); *see also Dockery v. State*, 2017 WL 3225994, at *14.   Indeed, there are no photographs of a lamp in the trial exhibits.  (*Id.*)  As a result, the record does not support Petitioner's claim.

fact could have found the accused guilty of every element of the offense beyond a reasonable doubt. *See* Tenn. R. App. P. 13(e); *Harris*, 839 S.W.2d at 75. In making this decision, we are to accord the State "the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences that may be drawn therefrom." *See Tuggle*, 639 S.W.2d at 914. As such, this Court is precluded from re-weighing or reconsidering the evidence when evaluating the convicting proof. *State v. Morgan*, 929 S.W.2d 380, 383 (Tenn. Crim. App.1996); *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Moreover, we may not substitute our own "inferences for those drawn by the trier of fact from circumstantial evidence." *Matthews*, 805 S.W.2d at 779. Further, questions concerning the credibility of the witnesses and the weight and value to be given to evidence, as well as all factual issues raised by such evidence, are resolved by the trier of fact and not the appellate courts. *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). "The standard of review 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

To convict Appellant of aggravated assault in this case, the jury must have found that Appellant intentionally or knowingly caused the victim to fear imminent bodily injury and used or displayed a deadly weapon or caused bodily injury. *See* T.C.A. §§ 39-13-101, 102.[10] "'Bodily injury' includes a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty. . . ." T.C.A. § 39-11-106(a)(2).

One acts "knowingly" when, with respect to a result of the person's conduct, the person "is aware of the conduct or is practically certain that the conduct will cause the result, irrespective of his or her desire that the conduct or result will occur." T.C.A. § 39-11-302(b), Sentencing Comm'n Cmts.

Appellant's main argument with regard to the sufficiency of the evidence to support the conviction for aggravated assault challenges whether the lamp is actually a deadly weapon. Appellant cites *State v. Sims*, 909 S.W.2d 46 (Tenn. Crim. App. 1995), as an analogous case, and claims that the lamp was not a deadly weapon because Appellant did not use it to inflict serious bodily injury, as used in the statutory definition of "deadly weapon". In other words, Appellant argues because there was no resulting serious bodily injury, the lamp was not actually a definition [sic].

---

[10] Tennessee Code Annotated section 39-13-102 was modified in 2013 to require that a defendant intentionally or knowingly commits an assault that "results" in either serious bodily injury to another, the death of another, or involved the use or display of a deadly weapon or "[w]as intended to cause bodily injury to another by strangulation or bodily injury by strangulation was attempted." T.C.A. § 39-13-102(a)(1)(A)(iv) (2013). This amendment took place after Appellant's trial.

We disagree with Appellant's argument.  A deadly weapon is not defined by the nature of the injury that is actually caused by the weapon.  A deadly weapon is defined by the manner of use, in this case the question is whether the lamp was used or intended to be used in a manner "capable of causing death or serious bodily injury."  T.C.A. § 39-11-106(a)(5)(B).  Appellant pushed the victim down a hallway when she refused to have sex with him, told her that he was going to kill her, and hit her in the temple twice with a heavy steel lamp.  A seven-pound steel lamp used to hit the victim repeatedly in the temple and the head is certainly an "instrument which, from the manner in which it is used or attempted to be used, is likely to produce death or cause great bodily injury."  *Morgan v. State*, 220 Tenn. 247, 415 S.W.2d 879, 882 (Tenn. 1967).  In other words, the lamp was a deadly weapon.  In fact, this Court has determined that anything from pointed-toe cowboy boots to a hairbrush can be used as deadly weapon.  *See, e.g. State v. Madden*, 99 S.W.3d 127, 137 (Tenn. Crim. App. 2002) (finding that cowboy boots were deadly weapon in an especially aggravated robbery case); *State v. Billy Ratcliffe*, No. 01 C01-9303-CC-00099, 1994 WL 65142, at *1, 3 (Tenn. Crim. App., at Nashville, Mar. 3, 1994), *perm. app. denied*, (Tenn. Aug. 8, 1994) (affirming sentence in case where hairbrush was a deadly weapon).  Appellant admits that the victim suffered bodily injury and we have determined that the evidence supports the conclusion that Appellant used or displayed a deadly weapon during the attack.  This issue is without merit.  Appellant is not entitled to relief.

*State v. Dockery*, 2014 WL 172379, at *6–7.

Here Petitioner fails to show that the TCAA based its decision on an unreasonable determination of facts.  In *Jackson v. Virginia*, the Supreme Court held that "in a challenge to a state criminal conviction brought under 28 U.S.C. § 2254— if the settled procedural prerequisites for such a claim have otherwise been satisfied—the applicant is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt."  443 U.S. 307, 324 (1979). And so, under this standard, a federal district court has to examine the evidence in the light most favorable to the State.  *Id.* at 326 ("[A] federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution").

Applying this standard, Petitioner fails to meet his burden.  Indeed, he repeats the same argument he made to the TCCA—that the lamp was not a deadly weapon.  Petitioner has the burden of proving that the TCCA based its decision on an unreasonable determination of the facts.  And he fails to do so.  At most, Petitioner's argument emphasizes that the jury needed to determine how he used the seven-pound steel lamp.  Nothing here suggests otherwise.

The TCCA applied the correct legal rule and cited as support state cases applying the *Jackson* standard.  *State v. Dockery*, 2014 WL 465725, at *6.  The TCCA identified the elements of aggravated assault under Tennessee law.  *State v. Dockery*, 2014 WL 465725, at *6–7 (citing Tenn. Code. Ann. §§ 39-13-101, 102.)  The TCCA then summarized the relevant evidence supporting Petitioner's conviction.  *Id.*

Based on the doubly deferential standard of *Jackson* and the AEDPA, the Court is satisfied that the State presented enough evidence at Petitioner's trial for a rational trier of fact to find beyond a reasonable doubt each of the elements of aggravated assault.  Petitioner threatened to kill the victim, picked up a seven-pound steel lamp, and used it to strike the victim twice in the temple.  Petitioner's conduct put the victim in fear of imminent injury and injured the victim.  The TCCA decision was neither contrary to, nor an unreasonable application of, federal law under *Jackson*, and the TCCA did not base its decision on an unreasonable determination of the facts given the evidence.  Issue One is **DENIED**.

## II.     Issue Two: Petitioner's Convictions for Aggravated Assault and Stalking Violate Double Jeopardy

Petitioner contends that his dual convictions for aggravated assault and stalking violate double jeopardy.  (ECF No. 1 at PageID 9.)  Respondent counters that the procedural default doctrine bars this claim because the TCCA rejected it by enforcing the independent and adequate

state law ground of waiver (ECF No. 17 at PageID 1641.)  Respondent is correct.  The TCCA

then considered the claim under the plain error standard and rejected it again.

The TCCA reviewed the claim and explained:

>     Appellant argues that his dual convictions for aggravated assault and stalking violate double jeopardy.  While conceding that he is limited to plain error review of this claim because of his failure to raise it in a motion for new trial, Appellant cites to *Blockburger v. United States*, 284 U.S. 299, 52 S. Ct. 180, 76 L. Ed. 306 (1932), *State v. Watkins*, 362 S.W.3d 530 (Tenn. 2012), and *State v. Denton*, 938 S.W.2d 373 (Tenn. 1996), to support his argument.[11]  The State, on the other hand, disagrees.

>     Tennessee Rule of Appellate Procedure 3(e) provides, in pertinent part:

>>     [I]n all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence, jury instructions granted or refused, misconduct of jurors, parties or counsel, or other action committed or occurring during the trial of the case, or other ground upon which a new trial is sought, unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived.

> Tenn. R. App. P. 3(e).

>     Additionally, "[a] motion for a new trial shall be in writing or, if made orally in open court, be reduced to writing, within thirty days of the date the order of sentence is entered.  The court shall liberally grant motions to amend the motion

---

[11] As part of this issue, Appellant also argues that his aggravated kidnapping conviction and aggravated assault conviction should be analyzed with the *Denton* factors.  Under *Denton*, resolution of a double jeopardy issue requires the following:

> (1) a *Blockburger* analysis of the statutory offenses; (2) an analysis guided by the principles of *Duchac* [*v. State*, 505 S.W.2d 237 (Tenn. 1973)], of the evidence used to prove the offenses; (3) a consideration of whether there were multiple victims or discrete acts; and (4) a comparison of the purposes of the respective statutes.  None of these steps is determinative; rather the results of each must be weighed and considered in relation to each other.

*Denton*, 938 S.W.2d at 381.  Appellant contends that because the assault and the kidnapping were one continuous act and the same evidence was used to convict him of both offenses they should be merged into a single conviction for assault.  Because we have already determined that the trial court's failure [sic] to instruct the jury as stated in *White* and reversed Appellant's conviction for aggravated kidnapping, remanding it for a new trial, we find it unnecessary to further address Appellant's argument with respect to the aggravated kidnapping and aggravated assault convictions.

for new trial until the day of the hearing on the motion for a new trial."  Tenn. R. Crim. P. 33(b).  Further, a trial court loses jurisdiction with the filing of a notice of appeal.  *See State v. Pendergrass*, 937 S.W.2d 834, 837 (Tenn. 1996).  In the case herein, Appellant did not raise these issues in his written motion for new trial.  Therefore, we are precluded from considering these issues raised by Appellant on appeal unless they rise to the level of plain error.

In order to prevail under the plain error doctrine, five factors must be present:  (1) the record must clearly establish what occurred in the trial court; (2) a clear and unequivocal rule of law must have been breached; (3) a substantial right of the defendant must have been adversely affected; (4) the accused did not waive the issue for tactical reasons; and (5) consideration of the error is necessary to do substantial justice.  *See State v. Smith*, 24 S.W.3d 274, 282–83 (Tenn. 2000) (adopting this Court's plain error test set forth in *State v. Adkisson*, 899 S.W.2d 626, 641–42 (Tenn. Crim. App.1994)); *see also* Tenn. R. Crim. P. 36(b).

In *State v. Bledsoe*, 226 S.W.3d 349 (Tenn. 2007), our supreme court revisited the question as to when an issue should be considered under the plain error doctrine.  226 S.W.3d at 353–55.  In its analysis, the supreme court stressed that appellate courts should use plain error sparingly.  *Id.* at 354.  The court then stated the following:

> [A]n error "may be so plain as to be reviewable . . . , yet the error may be harmless and therefore not justify a reversal."  *United States v. Lopez*, 575 F.2d 681, 685 (9th Cir. 1978); *see Adkisson*, 899 S.W.2d at 642.  The magnitude of the error must have been so significant "'that it probably changed the outcome of the trial."  *Adkisson*, 899 S.W.2d at 642 (quoting *United States v. Kerley*, 838 F.2d 932, 937 (7th Cir. 1988)); *see also United States v. Douglas*, 818 F.2d 1317, 1320 (7th Cir. 1987).

*Id.*  It is the accused's burden to persuade an appellate court that the trial court committed plain error.  *See United States v. Olano*, 507 U.S. 725, 734, 113 S. Ct. 1770, 123 L. Ed. 2d 508 (1993).  Further, our complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied.  *Smith*, 24 S.W.3d at 283.

Appellant notes that the Tennessee Supreme Court recently adopted a new standard for evaluating whether multiple convictions violate double jeopardy protections.  *See Watkins*, 362 S.W.3d at 556 (adopting the standard announced in *Blockburger*, 284 U.S. at 304).  Appellant contends the *Watkins* standard should not be applied retroactively when analyzing his convictions.

We disagree.  In general, new rules of constitutional law are not given retroactive effect.  *See Van Tran v. State*, 66 S.W.3d 790, 810–11 (Tenn. 2001).  Our supreme court has stated, "'a new state constitutional rule is to be retroactively

31

applied to a claim for post-conviction relief if the new rule materially enhances the integrity and reliability of the fact finding process of the trial." *Id.* at 811 (quoting *Meadows v. State*, 849 S.W.2d 748, 755 (Tenn. 1993) and citing T.C.A. § 40-30-222 (1997)). *Watkins* did not create a new state constitutional rule or change the analysis for determining when due process violation occurs; rather, *Watkins* clarified the test to be employed, aligning our state standard with the federal standard. *See Keen v. State*, 398 S.W.3d 594, 600 (Tenn. 2012). Accordingly, we conclude the standard articulated in *Watkins* should be applied herein to determine whether Appellant's convictions violate due process protections. As further support for our holding, we note that the Tennessee Supreme Court in *State v. Cross*, 362 S.W.3d 512 (Tenn. 2012), retroactively applied the *Watkins* test when determining whether a defendant's multiple convictions violated double jeopardy protections. 362 S.W.3d at 519.

We, therefore, turn to address whether Appellant's convictions in this case violate double jeopardy protections pursuant to the *Blockburger* test, as adopted by our highest court in *Watkins*. The double jeopardy clause of the Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offense to be twice put in jeopardy of life or limb. . . ." Article 1, section 10 of the Tennessee Constitution contains a similar provision. As our supreme court has noted many times, the three fundamental principles underlying double jeopardy provide protections against (1) a second prosecution after an acquittal; (2) a second prosecution after conviction; and (3) multiple punishments for the same offense. *Watkins*, 362 S.W.3d at 541; *see also State v. Pickett*, 211 S.W.3d 696, 705 (Tenn. 2007). This case concerns the last of these three categories.

The *Blockburger* test, as adopted in *Watkins*, addresses whether multiple convictions result in multiple punishments for the same offense. Pursuant to the *Blockburger* test, the threshold inquiry is whether the defendant's convictions arose from the same act or transgression. *Watkins*, 362 S.W.3d at 545. If the convictions do not arise from the same act or transgression, the state and federal prohibitions against double jeopardy are not implicated, and the inquiry ends. *Id.*

If, however, the convictions arose from the same act or transgression, the court must then determine whether the legislature intended to allow the offenses to be punished separately. *Id.* at 556. When the legislature has not clearly expressed its intent either to prevent or to preclude the dual convictions, the court must examine the statutes to determine whether the crimes constitute the same offense. *Id.* at 557. "The court makes this determination by examining statutory elements of the offenses in the abstract, rather than the particular facts of the case." *Cross*, 362 S.W.3d at 520. "[I]f each offense includes an element that the other does not, the statutes do not define the 'same offense' for double jeopardy purposes," and courts "will presume that the Legislature intended to permit multiple punishments." *Watkins*, 362 S.W.3d at 557.

As required by *Watkins*, we have examined the indictments and the relevant statutes, and we have considered whether the charges arise from discrete acts or involve multiple victims. *See* 362 S.W.3d at 556–57. The record provides two bases for concluding that Appellant's convictions do not arise from the same act or transgression, such that the state and federal prohibitions against double jeopardy are not implicated, and the inquiry ends. First, Appellant's convictions do not arise from the same continuous act. The indictment for aggravated assault was based upon the assault committed by Appellant on May 16, 2009. The indictment for stalking, on the other hand, indicates that the relevant dates for the offense were between July 31, 2009, and May 16, 2009. Further, the trial court specifically instructed the jury that it was not to consider the events of May 16, 2009, when deliberating on the stalking charge. The jury is presumed to have followed the trial court's instructions. *State v. Woods*, 806 S.W.2d 205, 211 (Tenn. Crim. App. 1990). Therefore, because Appellant's convictions did not arise from a single act, Appellant's double jeopardy claim does not survive our threshold inquiry. Consequently, a clear and unequivocal rule of law was not breached. Moreover, our complete consideration of all five of the factors is not necessary when it is clear from the record that at least one of them cannot be satisfied. *Smith*, 24 S.W.3d at 283. Appellant is not entitled to plain error review of this issue.

*Dockery v. State*, 2014 WL 172379, at \*12–14.

A state court's reliance on an independent and adequate state ground to decide a claim, such as a procedural rule that prohibits that court from reaching the merits of the constitutional claim, ordinarily bars a petitioner from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977); *see Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment.") (internal quotation marks and citations omitted). What is more, "[t]he state-law ground may be a substantive rule dispositive of the case, or a procedural barrier to adjudication of the claim on the merits." *Martin*, 562 U.S. at 315 (citation omitted).

To be an "adequate" procedural ground, a state rule must be "firmly established and regularly followed." *Id.* at 316 (internal quotation marks omitted). That said, "a discretionary state procedural rule . . . can serve as an adequate ground to bar federal habeas review . . . even if

the appropriate exercise of discretion may permit consideration of a federal claim in some cases but not others." *Id.* (alteration, internal citations, and quotation marks omitted).[12] But a federal court "may only treat a state court order as enforcing the procedural default rule when it unambiguously relied on that rule." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013) (citations omitted).

Petitioner's amended motion for a new trial did not include the double jeopardy claim. (ECF No. 16-1 at PageID 98–99, 109–14.) Petitioner raised it for the first time in his brief to the TCCA on direct appeal. (ECF No. 16-8 at PageID 482, 496–500.) The TCCA denied relief, holding that Petitioner's failure to include the claim in his motion for a new trial constituted waiver. *State v. Dockery*, 2014 WL 172379, at *12. The TCCA unambiguously based its decision on Rule 3(e) of the Tennessee Rules of Appellate Procedure. Another district court in Tennessee has held that Tennessee's Rule 3(e) is an independent and adequate state ground that is often enforced. *Sanders v. Ford*, No. 3:16-cv-02763, 2017 WL 3888492, at *9 (M.D. Tenn. Sept. 6, 2017). That court then considered the argument under the plain error standard and still rejected it. The Court agrees with the analysis in *Sanders* and concludes that Issue Two is barred from habeas review because the TCCA's decision rested on an independent and adequate state ground.[13] Issue Two is **DENIED**.

---

[12] Respondent relies on the Sixth Circuit's decision in *Maupin v. Smith* to analyze whether an inmate's failure to comply with a state procedural rule precludes federal review. 785 F.2d 135, 138 (6th Cir. 1986). But the Supreme Court's decision in *Martin* provides the appropriate standard. 562 U.S. at 315–16.

[13] Petitioner disagrees with the TCCA's plain error analysis. (ECF No. 1 at PageID 9.) "[A] state court's plain error analysis . . . is not equivalent to a review of the merits," and plain error review enforces rather than waives procedural default rules. *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006) (citation omitted); *Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) (characterizing plain error review as the enforcement of a procedural default). Petitioner's argument is insufficient to rebut the state court's determination of waiver.

**III.    Issue Three: The Trial Court Erred by Admitting Evidence of Prior Bad Acts, Violating Tennessee Rule of Evidence 404(b)**

As for Issue Three, Petitioner contends that the trial court erred in admitting evidence of his earlier assaults.  (ECF No. 1 at PageID 11.)  He claims that evidence was highly prejudicial and that the trial court's curative instruction did not remedy that prejudice when the jury considered the stalking charge.  (*Id*.)  Respondent argues for dismissal of this claim under the procedural default doctrine and because it is not available in a federal habeas corpus proceeding.  (ECF No. 17 at PageID 1643.)

On direct appeal to the TCCA, Petitioner claimed that the trial court's admission of the evidence violated Tenn. R. Evid. 404(b).  (ECF No. 16-8 at PageID 500).  In addressing this claim, the TCCA explained:

> Lastly, Appellant argues that the trial court erred in allowing evidence to be admitted in violation of Tennessee Rule of Evidence 404(b).  Specifically, Appellant complains about evidence of prior assaults that was admitted to support the stalking conviction.  Appellant insists that the evidence was highly prejudicial and the curative instruction offered by the trial court was insufficient to remove the prejudice.  The State, on the other hand, contends that Appellant waived the issue for failure to raise an objection at trial.
>
> At the outset, we note that the State correctly points out that Appellant failed to raise an objection to the testimony at trial.  Appellant's failure to object to the statements at trial constitutes waiver of the issue on appeal.  *See* Tenn. R. App. P. 3(e) and Tenn. R. App. P. 36(a) (stating "nothing in this rule shall be construed as requiring relief be granted to a party responsible for an error or who failed to take whatever action was reasonably available to prevent or nullify the harmful effect of an error.").
>
> Even if we were to review this issue under plain error, Appellant would not be entitled to relief.  Rule 404(b), Tennessee Rules of Evidence, provides:
>
>> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait.  It may, however, be admissible for other purposes.  The conditions which must be satisfied before allowing such evidence are:

35

(1) The court upon request must hold a hearing outside the jury's presence;

(2) The court must determine that a material issue exists other than conduct conforming with a character trait and must upon request state on the record the material issue, the ruling, and the reasons for admitting the evidence;

(3) The court must find proof of the other crime, wrong, or act to be clear and convincing; and

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

The rationale behind the general rule of inadmissibility in Rule 404(b) is that the admission of evidence of other wrongs poses a substantial risk that the trier of fact may convict the defendant based upon the defendant's bad character or propensity to commit criminal offenses, rather than upon the strength of the evidence of guilt on the specific offense for which the defendant is on trial. *State v. Dotson*, 254 S.W.3d 378, 387 (Tenn. 2008); *State v. James*, 81 S.W.3d 751, 758 (Tenn. 2002).

Evidence of other crimes, wrongs, or acts may be admitted as relevant to issues of "identity (including motive and common scheme or plan), intent, or rebuttal of accident or mistake." Tenn. R. Evid. 404(b), Advisory Comm. Cmts; *see Bunch v. State*, 605 S.W.2d 227, 229 (Tenn. 1980). To minimize the risk of unfair prejudice in the introduction of evidence of other acts, however, Rule 404(b) establishes protective procedures that must be followed before the evidence is admissible. *See* Tenn. R. Evid. 404(b); *James*, 81 S.W.3d at 758. Upon request, the trial court must hold a hearing outside the jury's presence to determine whether the evidence of the other acts is relevant to prove a material issue other than the character of the defendant. *James*, 81 S.W.3d at 758. The trial court must state on the record the specific issue to which the evidence is relevant and find the evidence of the other crime or act to be clear and convincing. *Id.* If the trial court substantially follows the procedures in Rule 404(b), the court's decision will be given great deference on appeal and will be reversed only if the trial court abused its discretion. *Id.* at 759.

In the present case, the testimony complained of by Appellant was the victim's testimony regarding Appellant's repeated assaults. In other words, the acts which formed the basis for Appellant's indictment for stalking. Therefore, we conclude that it was unnecessary for the trial court to follow the procedures in Rule 404(b). Additionally, the trial court gave the jury a lengthy instruction that it was only to consider the evidence as it related to the offense of stalking. Again, the jury

> is presumed to follow the instructions of the trial court. Appellant has not shown that a clear and unequivocal rule of law has been breached; he is not entitled to plain error review of this issue. Appellant is not entitled to relief.

*State v. Dockery*, 2014 WL 172379, at *14–15.

Above all, Petitioner failed to object to the admission of the evidence during trial. He raised the issue on appeal as an issue of state, not federal, law. (ECF No. 16-8 at PageID 500.) The TCCA correctly conducted a plain error analysis under the Tennessee Rules of Evidence and Tennessee case law. *State v. Dockery*, 2014 WL 172379, at *15. And so, this Court reviews this issue using the same analysis as it applied above to Issue Two. Petitioner waived this issue by failing to object during trial, and the TCCA correctly enforced that waiver citing Tenn. Rules of Appellate Procedure 3(e) and 36(a). *State v. Dockery*, 2014 WL 172379, at *14.

Besides, the TCAA relied on firmly established procedural rules when doing so. *See, e.g.*, *State v. Leath*, 461 S.W.3d 73, 108 (Tenn. Crim. App. 2013) (citing Tenn. R. App. 36(a) and concluding that the defendant had waived challenge to trial court's method of selecting alternate juror by failing to raise a contemporaneous objection to the method); *State v. Dile*, No. M2008-00389-CCA-R3-CD, 2009 WL 3031257, at *11 (Tenn. Crim. App. Sept. 24, 2009), *appeal denied* (Tenn. Mar. 15, 2010) (holding that failure to object to entry of separate convictions led to waiver of appellate review.)

Petitioner fails to acknowledge the default of this state law issue and makes no attempt to prove cause or prejudice. What is more, Petitioner did not "fairly present" this issue as a federal claim to the state appellate courts as *Baldwin* required. 541 U.S. at 29. Because no state court decision contains the necessary federal content to form a ruling on the merits of a federal constitutional claim, Petitioner has failed to exhaust a federal constitutional claim in state court. No further avenue exists for exhausting the claim as a federal constitutional claim, and it is

barred by procedural default.  The state law claim addressed by the TCCA is therefore

procedurally defaulted and is not cognizable in this forum.  And so Issue Three is **DENIED**.

## IV.   Ineffective Assistance Issues 4(a)–(g)

### A.   Issue 4(a)

During his post-conviction appeal, Petitioner asserted that his trial counsel provided

ineffective assistance (1) by failing to investigate the warrantless search of Petitioner's

girlfriend's home and Petitioner's arrest and (2) by waiving the preliminary hearing without

Petitioner's consent.  (ECF No. 16-22 at PageID 1481–84.)  Respondent argues that the TCCA's

decision—that Petitioner failed to prove deficient performance by counsel—was not contrary to

*Strickland* or based on an unreasonable determination of the established facts.  (ECF No. 17 at

PageID 1648–50.)

First the TCCA correctly identified *Strickland* as the proper federal standard for

analyzing Petitioner's claims of ineffective assistance.  (*Dockery v. State*, 2017 WL 3225993, at

*11.)  Then, the TCCA explained:

> First, the Petitioner contends that trial counsel was ineffective for failing to
> investigate his warrantless search and seizure and by waiving his preliminary
> hearing without his consent.  The post-conviction court accredited trial counsel's
> testimony that he saw no basis for filing a motion to suppress and concluded that
> challenging the Petitioner's warrantless arrest "would have done [him] no good"
> because the police had probable cause to arrest him without a warrant.  The trial
> record supports the conclusion of post-conviction court in that it shows Officer
> Cash arrested the Petitioner on May 16, 2009, based upon the victim's report to
> Officer Cash that the Petitioner had punched and kicked her and Officer Cash's
> observing injuries to the victim.  *See Beck v. Ohio*, 379 U.S. 89, 91 (1964)
> (providing as an exception to the warrant requirement that an officer has probable
> cause to believe a defendant has committed a crime).  Moreover, Officer Cash
> testified at trial that when he arrived at the Petitioner's girlfriend's home, she
> consented to his searching the residence.  The post-conviction court noted, and the
> trial record confirms, that no evidence was seized from the Petitioner or the home
> during his arrest.  Regarding the waiver of the Petitioner's preliminary hearing
> without his consent, the post-conviction accredited trial counsel's testimony that

the Petitioner personally waived the hearing. Nothing preponderates against the finding of the post-conviction court. Thus, the Petitioner is not entitled to relief.

*Dockery v. State*, 2017 WL3225994, at *11.

Turning to Petitioner's claim here, he fails to explain how the TCCA's decision differed from *Strickland*. And Petitioner has not shown that the decision was objectively unreasonable. Besides, he provides no argument or evidence that refutes the presumption of correctness this Court accords to the state court's factual determination. In short, in federal court, a state court's factual findings enjoy a presumption of correctness unless the petitioner proves the contrary by clear and convincing evidence. 28 U.S.C. §§ 2254(d)(2), 2254(e)(1).

With that in mind, this Court reviewed the trial transcript (ECF No. 16-3) and the post-conviction hearing transcript, (ECF Nos. 16-17, 16-18, 16-19, 16-20). This Court finds that the TCCA did not base its decision on an unreasonable determination of the facts. In fact, trial counsel testified that Petitioner consented to waiving the preliminary hearing. (ECF No. 16-18 at PageID 1266, 1294.) And trial counsel testified on cross-examination that, when a client is out on bond, waiving the preliminary hearing preserves the bond and allows the client to remain out of custody. (*Id.* at PageID 1293–94.) He added that he would not have recommended waiving the preliminary hearing if a hearing would have benefitted Petitioner. (*Id.*)

Trial counsel testified that he did not believe "how [Dockery] was arrested had anything to do with the case." (*Id.* at PageID 1268.) In fact, counsel testified that the officers "had probable cause to arrest [Dockery]" and if counsel "had thought they didn't have a reason to arrest him, [he] would have filed some type of motion." (*Id.* at PageID 1270.) This Court finds that Petitioner has failed to rebut his trial counsel's testimony that Petitioner consented to the waiver of the preliminary hearing to remain on bond pending trial. And counsel's testimony is

39

credible and fully supported by the trial record.  And so this Court holds that counsel did not perform deficiently by not filing groundless motions.  Issue 4(a) is **DENIED**.

### B.    Issue 4(b)

For this issue, Petitioner contends that trial counsel provided ineffective assistance by failing to challenge the introduction of 911 telephone calls played for the jury.  (ECF No. 1 at PageID 13.)  He claims the evidence is inadmissible under Tennessee Rule of Evidence 404(b). (*Id*.)  Respondent counters that the TCCA properly affirmed the trial court's decision to admit the phone calls under Tennessee Rule of Evidence 803(2).  (ECF No. 17 at PageID 1651.) And its decision was not contrary to *Strickland* or based on an unreasonable determination of the facts.  (*Id*.)

Respondent's position is persuasive here.  The TCCA reviewed this allegation and the post-conviction court's ruling and explained:

> Next, the Petitioner contends that trial counsel was ineffective for failing to challenge the 911 calls played for the jury because the calls were prior bad acts prohibited by Tennessee Rule of Evidence 404(b).  However, the trial record shows that the Petitioner's stalking charge was based on the incidents that occurred on July 31, 2008, February 6, 2009, and April 19, 2009.  During trial, the State played a recording of two 911 calls made by the victim after the Petitioner assaulted her on February 6, 2009.  The calls were relevant to the stalking charge under Tennessee Rule of Evidence 401 and, as found by the post-conviction court, admissible under Tennessee Rule of Evidence 803(2), the exception to the hearsay rule for excited utterances.  Thus, counsel was not ineffective for failing to object to the calls.

*Dockery v. State*, 2017 WL 3225994, at *12.

The Court agrees with Respondent on this point.  Petitioner articulates no legitimate, viable basis for excluding these recordings.  The recordings were relevant, admissible, and extremely probative.  Trial counsel did not perform deficiently by not objecting to relevant, admissible evidence.  Issue 4(b) is **DENIED**.

C.     Issue 4(c)

Petitioner next contends that "trial counsel was ineffective for failing to cross-examine the victim effectively regarding her lying to the police, her lying about the Petitioner[ ] hitting her with the lamp, and discrepancies in her direct testimony."  (ECF No. 1 at PageID 13.) Petitioner raised this before the TCCA.  Respondent argues that the TCCA's decision rejecting this claim was not contrary to *Strickland* or an unreasonable application or determination of the established facts.  (ECF No. 17 at PageID 1652–53.)

After reviewing Petitioner's allegations and the post-conviction court's decision on this issue, the TCCA held:

> The Petitioner contends that trial counsel was ineffective for failing to cross-examine the victim effectively regarding her lying to the police, her lying about the Petitioner's hitting her with the lamp, and discrepancies in her direct testimony. However, the post-conviction court accredited trial counsel's testimony that the victim's lie to the police was counsel's main defense.  The court found that trial counsel "immediately began impeaching the victim with her prior false statement to the police about a prior assault" and that he continued to attack her credibility for twenty-seven pages of her cross-examination.  We have reviewed the victim's cross-examination testimony, and it confirms that counsel thoroughly questioned her about her lie and her continuing to have contact with the Petitioner despite her claim that she was afraid of him.  Counsel even asked the victim at one point, "[A]ll this other stuff, it was a lie; is that correct?"  Thus, the record supports the post-conviction court's conclusion that counsel was not ineffective.

*Dockery v. State*, 2017 WL 3225994, at *12.

Petitioner does not explain how the TCCA's determination of this claim violated *Strickland*.  Nor does he explain how the TCCA based its decision on an unreasonable determination of the facts.  This is for good reason.  Both trial counsel and the prosecutor testified at the post-conviction hearing that trial counsel cross-examined the victim about her lie.  (ECF No. 16-18 at PageID 1235, 1271, 1297–98.)  For example, trial counsel testified that, once he learned the victim lied about one thing, he focused the defense and her cross-examination on

convincing the jury that "if she lied about something[,] she could have been lying about everything." (*Id.* at PageID 1271.)  Trial counsel testified the victim's lie put the defense in a strong position.  (*Id.* at PageID 1297–98.)   For that reason, according to trial counsel, he mounted a vigorous attack on the victim's credibility.  (*Id.*)

Based on this Court's review of the trial transcript (ECF No. 16-3) and, in particular, trial counsel's cross-examination of the victim (*id.* at PageID 226–53, 263), Petitioner has demonstrated no error in the TCCA's decision on this issue.  Counsel performed a thorough and forceful cross-examination of the victim.  (*Id.*)  And the TCCA found no weakness in counsel's performance.  Deference to the state court decision on this issue is appropriate.  Issue 4(c) is **DENIED**.

### D.   Issue 4(d)

As to Issue 4(d), Petitioner claims that trial counsel provided ineffective assistance by advising and coercing Petitioner not to testify at trial.  (ECF No. 1 at PageID 13.)  Again, Petitioner argued this point in the TCCA.  Respondent asserts that the TCCA's decision was not unreasonable under § 2254(d).  (ECF No. 17 at PageID 1654.)

The TCCA considered the issue and explained:

> Next, the Petitioner argues that counsel was ineffective for advising him not to testify and that counsel coerced him not to testify.  The post-conviction court accredited trial counsel's testimony that he advised the Petitioner not to testify because he was concerned that the State would impeach the Petitioner with prior convictions and that the Petitioner would be unable to control himself on the stand. The post-conviction court noted that the Petitioner had "created disturbances in prior court settings and had already lost his temper" during the State's opening statement.  We note that the Petitioner admitted at the evidentiary hearing that he inappropriately objected during the prosecutor's opening statement.  Regarding the Petitioner's claim that counsel coerced him not to testify, the post-conviction court found that it held a *Momon* hearing in which it questioned the Petitioner and that the Petitioner said it was his decision not to testify.  We have reviewed the hearing, and it supports the post-conviction court's conclusion that the Petitioner knowingly, voluntarily, and intelligently waived his right to testify.

*Dockery v. State*, 2017 WL 3225994, at *12.

The record shows that the trial court conducted a *Momon* hearing before Petitioner chose not to testify. During that hearing Petitioner testified that he and counsel had discussed whether he should testify and the fact that Petitioner had to make the decision either way. (ECF No. 16-3 at PageID 368–69.) Petitioner testified that he decided on his own not to testify and that he had not been forced or coerced into that decision. (*Id.* at PageID 369.) So Petitioner did not testify at trial.

What is more, during the post-conviction hearing, trial counsel testified that he advised Petitioner against testifying because the State might impeach him with his prior convictions. And counsel was concerned that Petitioner would be unable to control himself on the stand based on prior outbursts in front of the jury. (ECF No. 16-18 at PageID 1302–04.) Both the post-conviction court and the TCCA found counsel's testimony credible. This Court relies on those findings.

This is because "28 U.S.C. § 2254(d) gives federal habeas courts no license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them." *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983) (applying pre-AEDPA version of § 2254(d)); *see also Seymour v. Walker*, 224 F.3d 542, 553 (6th Cir. 2000) (accepting state court's factual finding that suspect received *Miranda* warnings, reasoning that, "[g]iven the credibility assessment required to make such a determination and the deference due to state-court factual findings under AEDPA, we cannot say that the trial court's finding was unreasonable under § 2254(d)(2)").

Petitioner has failed to rebut his testimony that he decided on his own not to testify at trial free from any coercion or duress. Based on the testimony at the post-conviction hearing,

Petitioner might have strengthened the State's case against him by testifying at trial.  Trial counsel's post-conviction testimony also strongly suggests that Petitioner's demeanor might have harmed his case.  For these reasons, Petitioner has not shown a reasonable probability that exercising his right to testify would have led to a different outcome at trial.  The Court finds that Issue 4(d) is baseless and is therefore **DENIED**.

E.     **Issue 4(e)**

For the next issue, Petitioner contends that trial counsel provided ineffective assistance by failing to object during the prosecutor's opening statement and closing argument.  (ECF No. 1 at PageID 13.)  Respondent asserts that this issue, while technically exhausted, is barred by the procedural default doctrine because Petitioner failed to comply with a state procedural rule. (ECF No. 17 at PageID 1654.)

When it reviewed this issue, the TCCA stated:

> The Petitioner contends that trial counsel was ineffective for failing to object to the prosecutor's improper opening statement and for trial counsel's making improper statements during trial counsel's closing argument.  However, the opening statements and closing arguments were not transcribed and included in the record for the direct appeal of the Petitioner's convictions, and they are not part of the post-conviction record.  Although the post-conviction court stated that it would be "glad" to have the opening statements and closing arguments transcribed and introduced into evidence as an exhibit at a later time, it did not do so.  The Petitioner carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal.  Tenn. R. App. P. 24(b).  Thus, the issues have been waived. *See* Tenn. R. App. P. 36(a).

*Dockery v. State*, 2017 WL 3225994, at *12.

Under the same analysis applied above to Issues Two and Three, Petitioner waived this issue by failing to include transcripts of the prosecutor's opening statement and closing argument, and the TCCA enforced the waiver citing Tennessee Rules of Appellate Procedure 24(b) and 36(a).  *State v. Dockery*, 2017 WL 3225994, at *12.  The procedural rules relied on by

the TCCA are firmly established. *Fuller v. Ford*, 2017 WL 3996425, at *7 (W.D. Tenn. Sept. 11, 2017) (citing *Mathis v. Colson*, 528 F. App'x 470, 478 (6th Cir. 2013); *Leath*, 461 S.W.3d at 108.

Petitioner has provided no argument rebutting the TCCA's determination that this claim was waived. And he does not argue cause and prejudice for his failure to meet the state procedural rules. The TCCA rested its decision on an independent and adequate state ground. And so this Court holds that the procedural default doctrine bars Issue 4(e) and it is therefore **DENIED**.

## F.    Issue 4(f)

As to Issue 4(f), Petitioner contends that counsel provided ineffective assistance by failing to object to an incorrect jury instruction and by failing to request a curative instruction. (ECF No. 1 at PageID 13.) Respondent argues that the TCCA properly rejected this claim because the jury instruction was appropriate for the counts of conviction. (ECF No. 17 at PageID 1657.) And Respondent argues that trial and appellate counsel's choices to not challenge the instructions was not ineffective assistance.

The TCCA reviewed this issue and explained:

> The Petitioner contends that trial counsel was ineffective for failing to object to an incorrect jury instruction and for failing to request a "corrective" instruction. He also contends that appellate counsel was ineffective for mentioning the issue in a footnote of the appellate brief instead of raising the issue in the direct appeal of his convictions.

> The Petitioner's complaint relates to the victim's testimony about the Petitioner's assaulting her on February 6, 2009. The State sought to introduce into evidence two photographs, *i.e.*, exhibits one and two, showing choke marks around the victim's neck. Defense counsel objected, arguing that the February 6 incident did not constitute stalking. The trial court concluded that the evidence was relevant to the stalking charge but stated that it was going to instruct the jurors that they could not consider the February 6 incident as evidence of count one, aggravated assault, or count three, aggravated kidnapping. However, the court actually

instructed the jurors that "you cannot use anything that happened on May the 16th, 2009, to show stalking. You cannot use anything that happened before that date to show aggravated kidnapping or aggravated assault." On direct appeal of the Petitioner's convictions, appellate counsel referred to the trial court's instruction in a footnote but did not raise an issue regarding the instruction. Appellate counsel also argued that evidence of the prior assaults violated Rule 404(b). This court concluded that the Petitioner waived the issue because he failed to object to the victim's testimony about the prior assaults under Rule 404(b) at trial and found no plain error. *Antonio Dockery*, No. W2012-01024-CCA-R3-CD, 2014 WL 172379, at *14–15.

The Petitioner argues that the trial court's instruction improperly allowed the jury to consider the February 6 assault as substantive evidence of the May 16 aggravated assault and aggravated kidnapping. We disagree. Although the trial court did not specifically instruct the jurors that they could not consider the February 6 assault as evidence of the May 16 aggravated assault or aggravated kidnapping, the court instructed them that they could not consider any assaults that occurred prior to May 16 as evidence of the aggravated assault or aggravated kidnapping. Therefore, the jurors obviously could not consider the February 6 assault in their consideration of the two offenses. Moreover, our review of the final written jury instructions shows that the trial court instructed the jurors that they could only consider assaults that occurred prior to May 16 "for the limited purpose of determining whether it provides proof of an element of stalking as charged in Count Two." Accordingly, trial and appellate counsel were not ineffective regarding the jury instruction.

*Dockery v. State*, 2017 WL 3225994, at *13.

The trial court instructed the jury not to consider any evidence of an assault that occurred before May 16 as being related to the aggravated assault or aggravated kidnapping charges. As a result, the jury could not consider the February 6 assault in their consideration of those two offenses. Because the trial court's instruction on this point was correct, Petitioner cannot show that, had counsel objected to the legal accuracy of that instruction, the trial court would have sustained the objection. Nor was there a need to request a curative instruction because no error to cure. Petitioner has failed to demonstrate a deficient performance by counsel or that he suffered any prejudice from counsel's performance. Deference to the state court decision on this issue is appropriate. For that reason, this Court **DENIES** this claim.

46

### G.      Issue 4(g)

Petitioner contends without elaboration that trial counsel provided ineffective assistance by raising baseless issues in the motion for new trial.  (ECF No. 1 at PageID 13.)  Respondent counters that the TCCA's adjudication of this claim was not unreasonable under § 2254(d). (ECF No. 17 at PageID 1659.)

The TCCA reviewed this issue and stated:

> The Petitioner's final ineffective assistance of counsel claim alleges that the attorney who represented him at sentencing and in his motion for new trial raised frivolous issues in the motion for new trial.  Again, we disagree with the Petitioner. Our review of the trial record reveals that counsel filed a motion for new trial, raising the following issues:  (1) that the evidence was insufficient to support the convictions; (2) that the verdict was contrary to the law and evidence; (3) that the trial court erred by admitting evidence in violation of Tennessee Rule of Evidence 404(b), specifically the April 19, 2009 incident report regarding the Petitioner's pushing the victim's car through a red light, testimony by General Sessions Clerk Cynthia Chambers regarding the order of protection, and the July 31, 2008 incident report regarding the Petitioner's death threat to the victim; (4) that the State committed prosecutorial misconduct by eliciting testimony that the Petitioner choked, hit, slapped, and held the victim against her will when her testimony revealed he only choked her; (5) that the trial court allowed the indictment to be amended without notice to the Petitioner; (6) that the trial court failed to clarify in the final jury instructions that the acts committed on May 16, 2009, were inapplicable to the stalking charge; and (7) that the trial court failed to clarify in the final jury instructions that the February 6 photographs of the victim's choking injuries applied only to the stalking charge.  In our view, none of these issues was frivolous.  Regardless, we fail to see, and the Petitioner has not explained, how he was prejudiced by counsel's raising any of the issues.  Therefore, he has failed to demonstrate that he received the ineffective assistance of counsel.

*Dockery v. State*, 2017 WL 3225994, at *13.

Petitioner fails to identify the issues in the motion for new trial that he now claims are baseless.  Nor does he explain why any issue was unwarranted.  Petitioner pursued most these issues in his direct appeal of his conviction and his post-conviction appeal.  (ECF Nos. 16-8 at PageID 482, 16-22 at PageID 1466–67.)  Petitioner's decision to pursue these same issues when appealing the denial of his motion for new trial suggests that he did not consider the claims in

that motion to be frivolous.  Petitioner does not explain why the remaining claims—those raised

by counsel in the motion for new trial but not pursued by Petitioner on appeal—were frivolous.

Petitioner has failed to rebut the TCCA's determination that these issues were not

frivolous.  *Dockery v. State*, 2017 WL 3225994, at *13.  He has also demonstrated no prejudice

from trial counsel's performance.  Deference to the state court decision on this issue is

appropriate.  And so this Court **DENIES** Issue 4(g).

## IV.    Prosecutorial Misconduct Issues 5(a)–(d)

### A.    Issue 5(a)

Petitioner next claims that the prosecutor committed prosecutorial misconduct by making

false statements during her opening statement and deceiving the jury during her closing

argument.  (ECF No. 1 at PageID 15.)  Respondent argues that this issue is barred by the

procedural default doctrine because Petitioner violated a state procedural rule.  (ECF No. 17 at

PageID 1659.)  The TCCA found that Petitioner waived the issue.

In its ruling on this issue, the TCCA explained:

> First, the Petitioner claims that the State committed prosecutorial
> misconduct by making statements during its opening statement that testimony later
> revealed were untrue and that the State deceived the jury during its closing
> arguments.  However, as explained previously, the Petitioner has waived this issue
> for failing to include the opening statements and closing arguments in the appellate
> record.  *See* Tenn. R. App. P. 24(b); 36(b).

*Dockery v. State*, 2017 WL 3225994, at *14.

The analysis this Court applied above to Issue 4(e) also requires dismissal of this claim.

Petitioner provides no argument rebutting the TCCA's determination that Petitioner waived this

claim.  What is more, Petitioner does not argue cause and prejudice for his failure to meet the

state procedural rules.  The TCCA based its decision on an independent and adequate state

ground.  As a result, this Court holds that Issue 5(a) is barred by procedural default and is

therefore **DENIED**.

### B.        Issue 5(b)

Petitioner contends that the prosecutor committed prosecutorial misconduct by telling the

jury that the May 16 incident occurred after the court issued an order of protection.  (ECF No. 1

at PageID 15.)  Respondent argues that Petitioner made this same mistake in the TCCA and this

claim lacks merit.  (ECF No. 17 at PageID 1661.)  This Court agrees with Respondent.

The TCCA considered this issue and explained:

> Next, the Petitioner claims that the State committed prosecutorial
> misconduct by telling the jury that the May 16 incident occurred after an order of
> protection had been issued.  He contends that the order of protection was issued on
> May 19, three days after the assault.  The post-conviction court found that
>
>> [t]he Order of Protection, entered as Exhibit 10 at the trial, clearly
>> shows that it was granted, signed and filed by Judicial
>> Commissioner Rhonda Harris on May 6, 2009, with a hearing to see
>> whether it would be made permanent to be heard May 19th, after it
>> was served on the petitioner.
>
>> We have reviewed the order of protection, and it confirms the findings of
> the post-conviction court.  We note that in this court's opinion affirming the
> Petitioner's direct appeal of his convictions, we also stated that the order of
> protection was entered by the trial court on May 6 and set for a hearing on May 19.
> An ex parte order of protection is in effect from the time it is issued until the time
> of the hearing.  *See* Tenn. Code Ann. § 36-3-605(b).  Accordingly, we find no merit
> to this claim.

*Dockery v. State*, 2017 WL 3225994, at *14.

The record supports the TCCA's determination of this issue.  The trial court granted and

issued the disputed order of protection on May 6, 2009.  (ECF No. 16-4 at PageID 398.)  Under

Tenn. Code Ann. § 36-3-605(b), an ex parte order of protection "shall be in effect until the time

of the hearing."  That the hearing was set for May 19, 2009, a date after Petitioner assaulted the

victim, has no impact on this analysis.  Deference to the state court determination is appropriate.  This Court therefore **DENIES** this meritless issue.

### C.      Issue 5(c)

On the next issue, Petitioner repeats a claim he argued to the TCCA that the prosecutor ambushed and surprised him at trial by calling five witnesses who were not listed on the indictment or disclosed before trial.  (ECF No. 1 at PageID 15.)  Respondent argues that the TCCA properly rejected of this issue.  (ECF No. 17 at PageID 1662.)  What is more, Respondent argues Petitioner cannot meet his burden.  The Court finds Respondent's position has merit.

The TCCA considered this issue and explained:

> The Petitioner contends that the State committed prosecutorial misconduct because he was "ambushed" and surprised by five State witnesses who were not listed on the indictment or disclosed before trial.  The post-conviction court noted in its order denying relief that trial counsel testified he received full discovery in this case and that counsel never claimed he was surprised by the calling of any State witnesses.  Thus, the court found that the Petitioner failed to prove he did not receive the names of the witnesses during discovery.  We conclude that the record does not preponderate against the findings of the post-conviction court.

*Dockery v. State*, 2017 WL 3225994, at *14.

Petitioner has not identified any witnesses that the State failed to disclose before trial.  Trial counsel testified during the post-conviction hearing that the State gave him "all the discovery."  (ECF No. 16-18 at PageID 1278.)  Petitioner has not rebutted the TCCA's determination that he failed to prove that he did not receive the names of prosecution witnesses in the provided discovery.  *Dockery v. State*, 2017 WL 3225994, at *14.  Deference to the state court decision is appropriate on this claim.  This Court therefore **DENIES** Issue 5(c).

### D.      Issue 5(d)

Petitioner contends that the State failed to disclose exculpatory evidence and permitted witnesses to give false testimony.  (ECF No. 1 at PageID 15.)  Respondent argues that the

TCCA's decision on this issue was not unreasonable because Petitioner failed to prove his claim. (ECF No. 17 at PageID 1662.)  As with his claim before the TCCA on this issue, Petitioner's claim lacks merit here.

The TCCA considered this issue and explained:

> Finally, the Petitioner claims that the State committed prosecutorial misconduct by failing to disclose exculpatory evidence and by allowing State witnesses to give false testimony.  The post-conviction court denied relief, stating that "[n]o proof has been offered of any *Brady* material in any statements of any witnesses."  We agree.  The Petitioner contends in his appellate brief that his petition contains "lengthy appendices demonstrating the proof" regarding this issue.  However, referring this court to the petition for post-conviction relief does not comply with Tennessee Rule of Appellate Procedure 27(a)(7)(A), which mandates that a brief contain "the contentions of the appellant with respect to the issues presented, and the reasons therefor, including the reasons why the contentions require appellate relief, with citations to the authorities and appropriate references to the record."  Accordingly, we conclude that the post-conviction court properly denied the petition for post-conviction relief.

*Dockery v. State*, 2017 WL 3225994, at *14.

Petitioner identifies no instances of false testimony by witnesses.  His conclusory allegations contain no citations to the trial transcript.  What is more, during the post-conviction hearing, the prosecutor testified that she was unaware of any exculpatory information.  (ECF No. 16-18 at PageID 1244.)  Petitioner claims that exculpatory evidence existed is speculative.  He has provided no affidavits or documents to support this claim.  This Court finds it appropriate to defer to the state court decision here.  The Court therefore **DENIES** Issue 5(d).

The Court therefore **DISMISSES** the § 2254 petition **WITH PREJUDICE**.  The Court will enter judgment for Respondent.

## **APPELLATE ISSUES**

A petitioner is not always entitled to appeal a district court's denial of a § 2254 petition. *Miller-El v. Cockrell*, 537 U.S. 322, 335 (2003).  In fact, the court must issue or deny a

certificate of appealability ("COA") when it enters a final order adverse to a § 2254 petitioner. *See* Rule 11, Rules Governing Section 2254 Cases in the United States District Courts.  A petitioner may not take an appeal unless a circuit or district judge issues a COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  The court may issue a COA only if the petitioner has made a substantial showing of the denial of a constitutional right, and the court has to reflect on the COA the specific issue or issues that satisfy the required showing.  28 U.S.C. §§ 2253(c)(2)–(3). A petitioner makes a "substantial showing" when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"  *Miller-El*, 537 U.S. at 336 (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)); *Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (holding that a prisoner must show that reasonable jurists could disagree with the district court's resolution of his constitutional claims or that the issues presented warrant encouragement to proceed further).

That said, the petitioner need not show that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814–15 (6th Cir. 2011) (same).  But courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Slack*, 537 U.S. at 337).

Petitioner's claims here lack merit, are noncognizable, and are barred by procedural default.  Because any appeal by Petitioner on the issues raised in this petition does not deserve attention, the Court **DENIES** a certificate of appealability.

For the same reasons the Court denies a certificate of appealability, the Court finds that any appeal would not be taken in good faith.  Thus, the Court **CERTIFIES** under Federal Rule

of Appellate Procedure 24(a) that any appeal here would not be taken in good faith, and also

**DENIES** leave to appeal in forma pauperis.[14]

      **SO ORDERED**, this 14th day of September, 2021.

              s/Thomas L. Parker

              THOMAS L. PARKER
              UNITED STATES DISTRICT JUDGE

---

[14] If Petitioner files a notice of appeal, he must pay the full $505 appellate filing fee or move to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit within thirty days of the date of entry of this order.  *See* Fed. R. App. P. 24(a)(5).